CALDWELL, Judge.
Petitioner, Florida East Coast Railway Company, seeks review of the order of the Florida Public Utilities Commission, dated January 14, 1965, requiring (1) that full passenger train operations be resumed within six months of the date of the order; (2J that the operation, as required by F.S. § 350.16, F.S.A., of at least one passenger train each way daily except Sunday, between the Cities of Jacksonville and Miami, be resumed within thirty days of the order; and (3) that such daily train consist of one locomotive, a mail car, a baggage car, a tavern car, a dining car, two sleepers and four coaches.
The operation of regular passenger and freight service by the petitioner railroad was halted January 23, 1963, by a strike of employees called by eleven non-operating labor unions and the refusal by employee members of the four operating unions to> cross picket lines.
After the strike the petitioner railroad,, which normally employed some 2100 to 2200 persons, had left upon its rolls some 250 supervisory employees, largely clerical and inexperienced in the operating field.
The strike occurred at the peak of the perishable freight shipping season and the petitioner, under emergency conditions,, managed to place one freight train in operation to meet the more urgent demands of the shippers.
Sabotage of the railroad began February 26, 1963, with the placing of obstructions on the track and mounted in intensity. Shots were fired into passing trains, airhose connections were cut, employees were intimidated, bridges were dynamited and the cable operating the central traffic control was cut. Between February 26, 1963, and December 14, 1964, there were 306 incidents of sabotage and violence.
By the exercise of precautionary measures against sabotage and the employing and training of non-union operating personnel the petitioner railroad managed to restore most of its pre-strike freight service by the fall of 1963. Meanwhile, litigation initiated by the unions and the United States in the Federal Courts resulted in the reinstatement of pre-strike rules and employment practices.
*219 In January 1964 the City of Miami, alleging the petitioner railroad was not making an effort in good faith to meet its statutory obligations, petitioned the Commission to order the railroad to operate at least one passenger train daily, except Sunday, over its lines. The City of St. Augustine, supported by the County Commissioners of St. Johns County, filed an identical petition. The railroad’s motion to dismiss was ■denied by the Commission and the matter was set for hearing. The burden was shifted to the petitioner “To show what its pres-ent operations are, how it is able to maintain the service it presently offers despite the continuing strike and acts of sabotage and why it should not resume its passenger •operations and all other rail services to the fullest extent that they were available prior to the strike.”
The hearings commenced on December .29, 1964, and culminated in the “Order Requiring Service Restoration” entered by the ■Commission January 14, 1965.
In support of its contention that the 'Commission’s order should be quashed, the petitioner contends the railroad is not responsible for its inability to furnish passenger service; the railroad has no absolute duty to provide passenger service; the law does not require the operation of passenger trains in the presence of danger; the evidence shows that because of the strike the railroad does not have personnel qualified to operate passenger trains; the evidence shows that the resumption of passenger service at this time would impose an undue financial burden on the railroad; the evidence shows that there is no public need for passenger service by the railroad; the Commission’s order is arbitrary and unreasonable and punitive in fixing short deadlines for the resumption of passenger service and in prescribing the consist of a passenger train.
Florida Statute § 350.16, F.S.A. provides in part as follows:
“Every railroad company shall operate over every part of its line not less than
one passenger and one freight train each way daily except Sunday; provided if after hearing and investigation the Florida Public Utilities Commissioners shall determine that the public need does not require such daily service they shall prescribe such service as in their opinion the public need does require and such service will be deemed sufficient until the Commissioners shall otherwise order. However, nothing herein contained shall be held as limiting the right of the Florida Public Utilities Commissioners to require of all railroads and common carriers such greater service as they shall deem to be to the best interest of the public.”
 The petitioner seeks to excuse its failure, following the strike, to operate a passenger train in compliance with F.S. § 350.16, F.S.A. on these grounds: Fear of physical damage to passengers by sabotage; a lack of public need for passenger service; financial inability to resume such service because of the condition of equipment and lack of adequately trained personnel. It is the province of the Commission to determine initially whether the railroad should be relieved of its statutory requirement to operate daily passenger service. We hold the railroad is required to operate a daily train in accordance with the provisions of the Statute, supra.
The Commission ordered that “[T]he minimum statutory passenger train service requirements should be met through the operation of a first class passenger train consisting of not less than a locomotive, a mail car, a baggage car, a tavern car, a dining car, two sleepers, and four coaches, of the best available equipment owned by said railroad, with air conditioning and the usual services involved in, and provided with, the operation of such a train.”
The petitioner insists the required “consist” is arbitrary and punitive and clearly invades the prerogatives of railroad management.
*220 The record shows there is no need for the train in question to include a mail car, inasmuch as the United States Government has refused to contract with the railroad to carry mail. It is shown that two sleepers and four coaches would permit the handling of approximately forty-two pull-man passengers and two hundred and forty coach passengers, notwithstanding the fact that the number of local passengers handled by ten F.E.C. trains before the strike was one hundred and forty per day. The evidence fails to sustain the need for all the service required and we hold the Commission’s order in that respect was unreasonable.
Our next and final problem is the determination of whether the Commission’s order requiring within six months the full resumption of all pre-strike passenger service is supported by the record. Suffice it to say, without detailing the voluminous evidence on that point, that, in the light of all circumstances, we think the showing of need for services does not warrant the requirement at this time that all passenger trains operated prior to the strike be restored.
The City of Miami presented eight witnesses, most of whom are officials or employees of municipalities and all, with one exception, from the Dade-Broward County area, which enjoys passenger service furnished by the Seaboard Air Lines Railroad and the Atlantic Coast Line Railroad which now operate the interstate trains formerly operated by the petitioner. The City of St. Augustine and St. Johns County did not appear at the hearing and only one witness from the area between St. Augustine and Stuart, which is without rail passenger service, testified, but inconclusively. The substance of the testimony touching the need for passenger service by the petitioner was to the effect that such service would be beneficial.
The paucity of proof of need for passenger service and the positive proof of danger to probable passengers of the petitioner railroad, coupled with the obvious inability, because of the strike, of the railroad to presently provide competent operating personnel and safe equipment, prompts our conclusion that the order of the Commission requiring resumption of full service within six months is unreasonable. This is not to say the railroad may disregard or unduly defer its obligation to the public to’ provide needed passenger service. We merely hold that, on the evidence in the record, the Commission has exceeded the-bounds of reason in requiring restoration of all pre-strike service within the time limit prescribed. The railroad will be held to furnish needed service under safe operating conditions as reasonably required by the Commission for the convenience of the public.
In summary we conclude the railroad is required, as provided by Florida Statute § 350.16, F.S.A., to operate daily over its lines a train equipped to serve public necessity. The order of the Commission is quashed and the cause remanded with directions to enter an order not inconsistent with this opinion.
It is so ordered.
ROBERTS, J., concurs.
THORNAL, C. J., concurs specially with Opinion.
THOMAS, DREW, O’CONNELL and HOBSON (Ret.), JJ., concur specially and agree with THORNAL, C. J.